**Tina M. KNUTH, as trustee for the next of kin of Cheryl Rae Knuth, deceased, and Tina M. Knuth, individually, Appellants,**

v.

**EMERGENCY CARE CONSULTANTS, P.A., Respondent.**

No. C3–01–1660.

Court of Appeals of Minnesota.

May 14, 2002.

Thomas M. Flaskamp, Keith A. Queensen, Yaeger, Jungbauer, Barczak & Vucinovich, PLC., Minneapolis, for appellants.

William H. Leary, Ann D. Bray, Geraghty, O'Loughlin & Kenney, St. Paul, for respondent.

Considered and decided by LANSING, Presiding Judge, RANDALL, Judge, and STONEBURNER, Judge.

## OPINION

STONEBURNER, Judge.

Appellant Tina M. Knuth[1] (Knuth) appeals from the district court's grant of respondent Emergency Care Consultant's (ECC) motion for a new trial and subsequent grant of ECC's motion for JNOV, after a jury rendered a verdict in favor of Knuth, alleging that (1) the district court erred by granting ECC's motion for JNOV based on its conclusion that Knuth's expert's testimony was unreliable and (2) the district court abused its discretion by granting respondent a new trial. Because the grant of JNOV and a new trial was unjustified, we reverse.

## FACTS

Decedent Cheryl Rae Knuth died on April 11, 1996, at age forty-four, from arte-

---

1. Tina M. Knuth is the trustee for and daughter of decedent Cheryl Rae Knuth.

riosclerotic heart disease (heart attack). An autopsy revealed that at the time of her death, there was a 95% blockage of the left main artery of her heart and that Cheryl Knuth had two heart attacks prior to the heart attack that killed her.

Cheryl Knuth was involved in an automobile accident on November 26, 1995, in which she sustained a concussion, cervical strain and bruising of her left hip. She was not hospitalized as a result of the accident and was treated at the Noran Neurological Clinic for injuries sustained in the accident.

Between December 31, 1995 and April 1996, Cheryl Knuth presented at the Abbott Northwestern Hospital Emergency Room, run by ECC, on nine different occasions and on at least five of those occasions complained of pain/spasms in her neck, chest, and arm apparently on her left side. Cheryl Knuth believed her symptoms were related to the automobile accident. Emergency room personnel did not conduct any tests to rule out cardiac disease but were not convinced that the accident accounted for Cheryl Knuth's complaints of pain and discomfort and checked with Dr. Ryberg to determine if she might be engaged in "drug-seeking."

Knuth's expert Dr. Pfortmiller, a full-time emergency room physician in St. Louis, Missouri for approximately thirteen years and a board certified physician in internal medicine, reviewed Cheryl Knuth's medical records and formed an opinion regarding the care provided by ECC physicians and a nurse practitioner to Cheryl Knuth prior to her death. Dr. Pfortmiller testified that the standard of care required of physicians practicing emergency medicine is as follows:

> [The] primary goal is to try to rule out the more serious or life or limb threat-

ening illnesses. Once you get past that point, and you feel satisfied you've done that, then you can go on and make your diagnosis of treatment and evaluation and disposition of the patient.

Dr. Pfortmiller further testified that if a patient presents at the emergency room with possible cardiac disease, then

> the duty of that [ER] physician is to evaluate the patient for [cardiac disease] and to make a reasonable attempt to rule it out before deciding that it's due to something else.

Dr. Pfortmiller testified that the emergency room physician's duty, under such circumstances, includes testing,[2] taking an adequate history, and conducting a physical. Dr. Pfortmiller testified that, based on his review of Cheryl Knuth's records, on at least five of Cheryl Knuth's visits to the emergency room she presented with symptoms of possible cardiac disease but neither the ECC physicians nor the ECC nurse practitioner treating Cheryl Knuth ran tests to determine whether she was suffering from a cardiac problem.

Dr. Pfortmiller testified that, in his opinion, the ECC physicians and nurse practitioner deviated from the standard of care with regard to Cheryl Knuth on four of her nine visits to the emergency room. Dr. Pfortmiller also testified that the ECC physicians and nurse practitioner's deviation from the standard of care caused Cheryl Knuth's death.

Knuth sued Allina Health Systems d/b/a Abbott Northwestern Hospital and ECC, alleging that they were negligent in the their treatment of Cheryl Knuth resulting in her death. The hospital was dismissed by stipulation prior to trial.

The case was tried to a jury. The district court denied respondent's motion for

---

**2.** Dr. Pfortmiller testified that two tests are readily available to emergency room physi-

cians to rule out cardiac etiology including an E.K.G. and blood tests for cardiac enzymes.

a directed verdict made during trial. The jury returned a verdict in favor of Knuth and awarded damages of approximately $200,000. The district court issued its findings of fact, conclusions of law, and judgment, ordering judgment for Knuth. The district court found that expert testimony supported a claim of negligence by ECC and that such negligence played a substantial part in bringing about Cheryl Knuth's death.

Nonetheless, in December 2000, the district court granted ECC's motion for a new trial on the basis that the verdict is not justified by the evidence. And, in July 2001, the district court granted ECC's motion for JNOV, in part, because

> granting defendant's motion for a new trial put both parties in an untenable position, in that plaintiff would be unable to rely upon its expert witness at a second trial and because it was unclear in the order that defendant had sought relief as to liability only. This court * * * grants defendant's motion for j.n.o.v., in order to allow plaintiff to appeal the court's order.

The district court also stated, in its memorandum supporting the grant of JNOV, that (1) Knuth "failed" to prove the standard of care, departure from the standard of care, and causation and (2) the testimony of Knuth's expert was "inherently unreliable." This appeal followed.

### ISSUES

I. Did the district court err by granting ECC's motion for JNOV?

II. Did the district court abuse its discretion by granting ECC's motion for a new trial?

### ANALYSIS

**I. JNOV**

▮ "A district court's grant of judgment notwithstanding the verdict 'is a question of law subject to de novo review.'" *Anderson–Johanningmeier v. Mid–Minn. Women's Ctr., Inc.*, 637 N.W.2d 270, 273 (Minn.2002) (quotation omitted). The grant of a motion for JNOV is only appropriate "when the evidence is so overwhelming on one side that reasonable minds cannot differ as to the proper outcome." *Lamb v. Jordan,* 333 N.W.2d 852, 855 (Minn.1983) (quotation omitted). Furthermore, the evidence must be examined in a light most favorable to the nonmoving party. *Harman v. Heartland Food Co.,* 614 N.W.2d 236, 240 (Minn.App. 2000).

Here, the jury returned a verdict for Knuth, finding that one or more of ECC's employees who treated Cheryl Knuth was negligent in providing professional services to her and that such negligence was a direct cause of her death. After entering findings of fact, conclusions of law and an order of judgment for Knuth based on the verdict, the district court granted ECC's motion for a new trial, then granted ECC's motion for JNOV.

Knuth argues that the district court improperly granted ECC's motion for JNOV because (1) she presented ample evidence of medical malpractice to support the jury's verdict; (2) an expert's credibility is a question for the jury; and (3) under the evidence presented, "it cannot be said that reasonable minds could reach only one conclusion against the verdict."

ECC alleges that (1) Dr. Pfortmiller's testimony was unreliable because he didn't opine that Cheryl Knuth's treating physicians, outside the emergency room, were negligent; (2) Dr. Pfortmiller's testimony was merely an expression of personal opinion; and (3) Dr. Pfortmiller's testimony was insufficient to support a prima facie case of medical negligence.

In order to make out a prima facie case of medical malpractice for negligent treatment, a plaintiff must show

(1) the standard of care recognized by the medical community as applicable to the particular defendant's conduct; (2) that the defendant departed from that standard; * * * (3) that the defendant's departure from that standard was a direct cause of [the patient's] injuries; and (4) damages.

*Reinhardt v. Colton*, 337 N.W.2d 88, 94 (Minn.1983) (quotation omitted). Expert testimony is required to "establish the standard of care, the defendant's departure from that standard, and causation." *Id.* at 95 (citation omitted).

Dr. Pfortmiller, who, respondents acknowledge, is qualified to be an expert witness in this case, specifically testified about the standard of care of emergency room personnel and the departure of ECC's personnel from the standard of care. Dr. Pfortmiller also testified that the departure from the standard of care caused Cheryl Knuth's premature death. Damages are not disputed.

Dr. Pfortmiller testified that emergency room personnel must first rule out life threatening illness and that it is the duty of an emergency room physician to evaluate a patient presenting symptoms suggestive of cardiac or heart etiology "for such and to make a reasonable attempt to rule it out" before deciding that the symptoms are due to something else.

Dr. Pfortmiller testified that three ECC emergency room physicians and an ECC emergency room nurse practitioner deviated from the standard of care he articulated. According to Dr. Pfortmiller, the physicians and nurse practitioner deviated from the standard of care because, despite Cheryl Knuth's presentation of cardiac symptoms, none of the health care providers conducted any tests on Cheryl Knuth to rule out possible cardiac abnormalities.

Dr. Pfortmiller also clearly testified that ECC's personnel's departure from the standard of care caused Cheryl Knuth's death. A plaintiff properly meets the causation element of a medical negligence claim when she introduces

[e]vidence which affords a reasonable basis for one to conclude that it is more likely than not that defendant's conduct was a substantial factor in bringing about the result.

*Walton v. Jones*, 286 N.W.2d 710, 715 (Minn.1979) (quotation omitted). Mere conjecture is insufficient to support a verdict for plaintiff. *Id.*

Here, Dr. Pfortmiller specifically testified that it is more likely than not that cardiac testing would have revealed problems with Cheryl Knuth's heart when she presented to the emergency room on four of nine occasions. ECC's Dr. Leech agreed that Cheryl Knuth more than likely had some kind of artery blockage when she was being seen in the emergency room. ECC's Dr. Kearney agreed that because plaques in coronary arteries form slowly, there would be an assumption that blockage present when Knuth was seen in the emergency room, but noted that blockage can form at an accelerated speed, so he would defer to other experts about whether the blockage was actually present in Knuth. ECC's expert witness, Dr. Nordstrom, testified that, in his opinion, an E.K.G. would not have shown changes to Knuth's heart caused by the two prior heart attacks but admitted that other tests readily available in the emergency room might have detected a blockage. Dr. Pfortmiller testified that finding the abnormality would have led to a further cardiac work-up. Although the causation testimony was not entirely explicit, the case was presented to the jury on the theory that

discovery of the blockage would have led to removal of the blockage and would have prevented Cheryl Knuth's death on April 11, 1996, and that her life expectancy, with the heart disease, would have been an additional 15 years. Dr. Nordstrom agreed that Dr. Pfortmiller's opinion about Cheryl Knuth's life expectancy was reasonable. Knuth argued in closing, without objection, that if Cheryl Knuth had received the proper cardiac work-up, she would have lived fifteen more years. No evidence in the record refutes the circumstantial evidence reasonably implied from the explicit testimony, that had the blockage been discovered, it could have been treated, preventing the heart attack that killed Cheryl Knuth. Despite the thinness of the causation evidence, we conclude that reasonable minds could differ as to whether Knuth provided sufficient evidence of causation and that the evidence is sufficient to support a prima facie case of medical malpractice and the jury's verdict.

ECC contends that Dr. Pfortmiller's testimony was unreliable and, therefore, that the district court properly granted JNOV. The district court permitted Dr. Pfortmiller to testify at trial, and only after trial found the testimony "inherently unreliable." If the district court believed that Dr. Pfortmiller's testimony was inherently unreliable, then it should not have permitted him to testify at trial. By admitting Dr. Pfortmiller's testimony and later determining that his testimony was inherently unreliable, the district court essentially found that Dr. Pfortmiller's testimony was inadmissible.

■ It is inappropriate for a district court to determine that evidence is inadmissible during a motion for JNOV. *Reinhardt*, 337 N.W.2d at 93 n. 1. Instead, a district court should determine whether evidence is admissible when it is offered because finding that evidence is inadmissible during a motion for JNOV "usurps the role of the jury." *Id.* at 92 n. 1.

■ Furthermore, the reliability of Dr. Pfortmiller's testimony, at least with regard to causation, goes to the weight of Dr. Pfortmiller's testimony not its admissibility. *See generally State v. Myers*, 359 N.W.2d 604, 608, 611 (Minn.1984) (stating that reliability of clinical psychologist's testimony with regard to the cause of alleged sexual abuse victim's condition, in a criminal trial, went to weight of evidence not admissibility). The jury, not the district court, weighs the credibility of an expert's testimony. *See Prechtel v. Gonse*, 396 N.W.2d 837, 839 (Minn.App.1986) (noting that jury determines weight and credibility of expert testimony).

Here, the district court invaded the province of the jury by weighing the credibility of Dr. Pfortmiller's testimony after it was admitted. ECC vigorously cross-examined Dr. Pfortmiller, adequately exposing any unreliability of his testimony. The district court's grant of JNOV was improper.

Even if the district court erred by admitting Dr. Pfortmiller's testimony, such error does not support a grant of JNOV. *McKay's Family Dodge v. Hardrives, Inc.*, 480 N.W.2d 141, 145 (Minn.App.1992) (stating that "[t]he rule is well established in this state that [JNOV] will never be granted for errors in either law or procedure committed at the trial" including the improper admission of expert testimony) (quotation omitted), *review denied* (Minn. Mar. 26, 1992).

ECC also alleges that because Dr. Pfortmiller testified that competent physicians could determine that the ECC physicians and the nurse practitioner did not deviate from the standard of care, the district court properly granted JNOV. Although Dr. Pfortmiller acknowledged the possibili-

ty that a different doctor could reach a different conclusion than him with regard to whether Cheryl Knuth received proper care from the ECC physicians and the nurse practitioner, Dr. Pfortmiller testified that, in his opinion, the physicians and the nurse practitioner departed from the standard of care he articulated.

Because (1) the evidence is not such that reasonable minds could reach only one conclusion; (2) the district court improperly granted JNOV by finding Dr. Pfortmiller's testimony unreliable; (3) Dr. Pfortmiller did not simply give a personal opinion but, instead, gave his expert opinion; and (4) Dr. Pfortmiller provided sufficient evidence of causation, we reverse the district court's grant of JNOV.

## II. New Trial

A district court has the discretion to grant a new trial and that decision will not be overturned absent an abuse of discretion. *Navarre v. S. Washington County Schs.*, 633 N.W.2d 40, 49 (Minn. App.2001), *review denied* (Minn. Nov. 13, 2001). A de novo standard of review applies if a district court grants a new trial because of an error of law. *Id.*

Regardless of whether a de novo standard of review or an abuse of discretion standard of review applies to the present case, the district court's grant of a new trial was improper because Knuth provided competent evidence to support her theory of the case.

ECC argues that a new trial is appropriate if the court reverses the district court's grant of JNOV because (1) the evidence, especially Dr. Pfortmiller's testimony, does not adequately support the negligence verdict and (2) a new trial is required to resolve the issue of causation.

Minn. R. Civ. P. 59.01 provides for grant of a new trial. A district court's ability to order a new trial must be "exercised with caution" but a reviewing court "will usually defer to the exercise of that authority by the trial court." *Lamb,* 333 N.W.2d at 856 (citations omitted). A new trial may be granted by a district court only if

the verdict is so contrary to the preponderance of the evidence as to imply that the jury failed to consider all the evidence or acted under some mistake or from some improper motive, bias, feeling or caprice, instead of honestly and dispassionately exercising its judgment.

*Lamb,* 333 N.W.2d at 855–56.

The district court ordered a new trial primarily because it noted that Knuth's medical negligence case "relied entirely" on Dr. Pfortmiller's testimony and determined that Dr. Pfortmiller's testimony was (1) "grossly inadequate" with regard to the standard of care; (2) vague with regard to the deviation from the standard of care; and (3) "serious[ly] flaw[ed]" with regard to causation. The district court's rationale is without merit. The jury's verdict was not so contrary to the preponderance of the evidence to imply that the jury did not evaluate all the evidence. *See id.* Instead, the verdict is supported by competent evidence and, therefore, the district court both erred and abused its discretion by granting ECC a new trial.

The district court improperly made credibility determinations about Dr. Pfortmiller's testimony when it found that his testimony is unreliable. The district court failed to recognize that it is the jury and not the district court that must pass on the expert's credibility. *See Riewe v. Arnesen,* 381 N.W.2d 448, 459 (Minn.App.1986), *review denied* (Minn. Mar. 27, 1986) (stating that the value of expert's testimony is a question for the jury). Dr. Pfortmiller provided adequate testimony to establish by a preponderance of the evidence that

the ECC physicians and nurse practitioner were negligent when they treated Cheryl Knuth on four separate occasions. Because Dr. Pfortmiller provided sufficient testimony to support a negligence finding, the district court erred and abused its discretion by contending that the testimony was inadequate and by ordering a new trial.

## DECISION

The district court erred by granting ECC's motion for JNOV based on its evaluation of the reliability of Knuth's expert witness. The evidence of the standard of care, departure from the standard of care, causation and damages supports the verdict.

**Reversed.**